UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JENNIFER DECKER, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:20-CV-380-JPK |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of ) | |
| Social Security Administration, ) | |
|     Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Jennifer Decker, and Plaintiff's Opening Brief [DE 21]. Plaintiff requests that the decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for further administrative proceedings. For the following reasons, the Court grants Plaintiff's request.

**PROCEDURAL BACKGROUND**

On January 31, 2018, Plaintiff filed an application for disability insurance benefits, alleging disability as of January 24, 2018. The application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on November 19, 2019. On January 28, 2020, the ALJ issued an unfavorable decision, making the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. The claimant has not engaged in substantial gainful activity since January 24, 2018, the alleged onset date.
>
> 3. The claimant has the following severe impairments: obesity; major depressive disorder, recurrent, moderate; generalized anxiety disorder; panic disorder; obsessive compulsive disorder; and posttraumatic stress disorder ("PTSD").

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: can occasionally climb, balance, stoop, kneel, crouch, or crawl. With work that can be learned in 30 days or less, with simple routine tasks, simple work-related decisions, routine work place changes. Work with daily or weekly productivity goals, that is not hourly productivity goals, is able to remain on task in two-hour increments; with occasional interaction with coworkers and supervisors; and, no interaction with the general public.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on March 26, 1966, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 24, 2018 through the date of this decision.

(AR 18-27[1]).

The Appeals Council declined to assume jurisdiction, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which is found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge

between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

**ANALYSIS**

Plaintiff argues that the ALJ failed to properly consider Plaintiff's need for a job coach and other employment accommodations; failed to account for all of Plaintiff's demonstrated limitations in the RFC; and erred by relying on the vocational expert's job estimate when it was not supported by substantial evidence. Because the ALJ did not account for Plaintiff's need for a job coach, and the VE testified that reliance on a job coach would likely preclude competitive employment, the Court remands this case for further proceedings.

**A. Employment Accommodations**

The ALJ found that Plaintiff suffers from a variety of severe mental impairments including anxiety, depression, and obsessive-compulsive disorder. (AR 18). Plaintiff testified that she was fired from her last full-time job in January 2018, for reasons related to her anxiety issues. (AR 51). After she was fired, she received job placement assistance from Goodwill Industries of Northeast Indiana. (*See* AR 1701). She also received Vocational Rehabilitation services from the state of Indiana, including a counselor who would meet with her regularly and help her to sustain a job. (AR 340-44). Although the RFC contained a variety of limitations related to Plaintiff's mental impairments, the RFC did not address her alleged need for a job coach, nor did the decision specifically explain why a job coach was or was not needed. Instead, the ALJ found generally that Plaintiff's complaints were not fully substantiated by the medical evidence (AR 22), and that while she may not be suitable for jobs that are "quite stressful," she could perform full-time work with "less mentally challenging work tasks." (AR 25).

Plaintiff objects to a series of statements the ALJ made about her job and the services provided by her job coach, but for the reasons described below, these arguments do not justify remand. Plaintiff works four hours per day, 16 hours per week, at a nursing and rehabilitation

5

center, with certain accommodations suggested by the job coach. (AR 60, 1701). Plaintiff testified that over the course of a four-hour shift, she spends roughly 30-45 minutes "off task" because of panic attacks, "more than some days but not every day." (AR 61-62). She testified that her employer had not discussed this off-task time with her because she had "accommodations for that through [the] vocational rehabilitation agency." (AR 62). A form apparently filled by Plaintiff's coach indicated that Plaintiff could work at the rehabilitation center with the following accommodations: "Coping skills/Motivation/Positive comments, Flexible work schedule, Part-time hours to maintain benefits, sensitive to emotional needs and communication needs." (AR 1701).

The ALJ considered the form, and was "not persuaded [the] form establishes specific or extraordinary accommodations":

> The form confirmed work tasks, demands, and responsibilities were consistent with the claimant's identified abilities. In terms of accommodations, "coping skills/motivation/positive comments", and a flexible work schedule were noted, and although part-time work was also noted, the form explains this was "to maintain benefits". "Sensitive to emotional and communication needs" was also noted. The form does not reflect the claimant was to be allowed to be off task due to anxiety, or any other reason as she testified, the accommodations defined apply only to this one job, and they do not appear to represent accommodations outside of what would typically be made, i.e. being sensitive to someone's emotional and communication needs.

(AR 27). Plaintiff believes the ALJ wrongly "assum[ed] that 'part-time hours to maintain benefits' refers to Social Security disability" (Pl. Br. [DE 21] at 14), but there is no evidence the ALJ made that assumption. The ALJ simply repeated the statement from the record that Plaintiff was working part-time to "maintain benefits," which could be construed as evidence that Plaintiff was in fact capable of full-time work – or, at least, that the job coach did not believe she was incapable of full-time work. Another factfinder could have interpreted the statement differently, but the Court will not re-weigh the evidence in that regard. *McKinzey*, 641 F.3d at 890.

Next, Plaintiff takes issue with the ALJ's conclusion that the form "does not reflect the claimant was to be allowed to be off task due to anxiety, or any other reason as she testified . . . and [the accommodations] do not appear to represent accommodations outside of what would typically be made." Although the ALJ could have discussed this issue more fully, the Court finds no reversible error in that statement. Plaintiff specifically testified that she had an accommodation to "let [her] have times where she can deal with anxiety" during the workday. (AR 62). The form did not list that specific accommodation but discussed being "sensitive to her emotional needs" and having a "flexible work schedule." (AR 1701). Plaintiff argues these phrases could have encapsulated the accommodation for off-task time during the workday. Pl. Br. at 15. The form itself was written by Plaintiff's job coach, not her employer, so it may not have been a precise account of the accommodations she received. Nonetheless, the ALJ noted – correctly – that "the form does not reflect the claimant was allowed to be off task due to anxiety." (AR 25). The ALJ did not say that the form proved Plaintiff did not receive the accommodation, only that the form did not "reflect" or "establish" that she did so. The ALJ also concluded that the accommodations listed on the form were "typical" and not "specific" or "extraordinary." (AR 25). Given the examples of generic accommodations highlighted by the ALJ (*e.g.* "flexible work schedule," "motivation," "sensitive to emotional needs"), it is clear how the ALJ came to that conclusion. Plaintiff may disagree, but the ALJ adequately explained her reasoning.

Next, Plaintiff objects to the ALJ's characterization of a March 2018 note from her mental health provider, in which Plaintiff reported meeting with the state Vocational Counselor: "[Plaintiff] reported that it went well and that the [vocational] counselor has 'no doubts' she can work." (AR 573). The ALJ quoted this note in the decision and observed: "It seems the claimant has been aware since March 2018[] that her Vocational Rehabilitation counselor had confidence

7

in her ability to work." (AR 23). Plaintiff believes the ALJ took this note out of context and "seems to be insinuating . . . that the Vocational Rehab Counselor, and [Plaintiff] herself, believe she is capable of full-time employment, which is not the case."[2] Pl. Br. at 14. This is a strained interpretation of the ALJ's statement. The ALJ cited the mental health note as evidence contradicting Plaintiff's own allegations that she was unable to perform a regular routine. (*See* AR 23). The ALJ simply repeated the content of the statement: that Plaintiff believed *the vocational counselor* thought Plaintiff could work. Evidence that a vocational trainer thought Plaintiff was able to work could be interpreted as evidence that she was at least somewhat capable of maintaining a routine. Again, another ALJ may have viewed that report differently, or may not have mentioned it at all, but that does not provide a basis for remand.

### B. Job Coach

Separately, Plaintiff argues that the RFC failed to account for her need for a job coach, despite the VE's testimony that a job coach would preclude "competitive" employment. After the VE identified several jobs available to a person with some of Plaintiff's limitations, the ALJ specifically asked whether needing "a job coach for the first four months on the job" would "change [the VE's] answer." The VE responded: "Yes. That would eliminate the jobs that I've cited, and that would not be consistent with competitive employment; that would be most consistent with supported employment." (AR 75-76). Supported or "sheltered" employment is work specially tailored to a claimant's limitations, which is not the same as substantial gainful activity. *See* 20 C.F.R. § 404.1573(c); *Cardenas v. Berryhill*, No. 17 CV 8242, 2018 WL 5311899, at *5 (N.D. Ill. Oct. 26, 2018) ("sheltered work activity [does] not establish an ability to engage in

---

[2] Plaintiff identifies no evidence that the vocational counselor did not think she was capable of full-time work. Plaintiff points to an introductory letter from the counselor indicating that, based on information that Plaintiff provided, Plaintiff "require[d] multiple [vocational rehab] services for a period exceeding six months." (AR 340). That does not contradict the statement that the counselor subsequently developed "confidence" that Plaintiff could work full-time.

8

gainful employment") (quoting *Thompson v. Schweiker*, 665 F.2d 936, 940 (9th Cir. 1982)); *see also Zon v. Saul*, No. 2:19-CV-212, 2020 WL 4593330, at *3 (N.D. Ind. Aug. 10, 2020) (citing cases showing that an ALJ cannot assume a claimant will get the same accommodations the claimant received in a previous job).

Plaintiff testified that she did in fact retain her job coach for at least four months after starting work at the rehabilitation center. (AR 66). The coach provides "ongoing" support to Plaintiff directly, and met with Plaintiff and the employer jointly "a few times . . . to figur[e] out how things are going." (AR 66-67). The ALJ did not point to any evidence contradicting this testimony and made no other findings suggesting that Plaintiff did not need the job coach's services.[3] Ultimately, the ALJ did not explain how Plaintiff could perform a significant number of jobs in the national economy given the VE's testimony that reliance on a job coach would not be "consistent with competitive employment." Nor did the ALJ account for a job coach in the RFC. Effectively, the ALJ "ignore[d] an entire line of evidence that contradicts the decision." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Zon,* 2020 WL 4593330, at *4-5 (N.D. Ind. Aug. 10, 2020) (where opinion evidence supported the need for a job coach, ALJ failed to build a logical bridge to conclusion that a job coach was not needed).

The ALJ's omission is particularly important because the ALJ herself solicited this evidence from the VE, based on a hypothetical that was supposedly tailored to Plaintiff's situation. (*See* AR 75-76). Perhaps the ALJ asked the question without thinking that a job coach was necessary, but that is far from clear, given that the ALJ found Plaintiff had a variety of symptoms and functional limitations (AR 21-22) and was unable to perform past relevant work (AR 25).

---

[3] Although the ALJ concluded that the form for the rehabilitation center "did not establish[] specific or extraordinary accommodations" for that particular job (*see* AR 25, 1701), the job coach did more than just negotiate accommodations. (*See* AR 340-44). Nothing in the ALJ's discussion of that form, or of the job at the rehabilitation center, indicated that Plaintiff did not need a job coach.

9

Despite the ALJ's general finding that Plaintiff's claimed limitations were not fully substantiated by the medical evidence (AR 22), the Court cannot infer that ALJ thought a job coach was unnecessary – the ALJ's own hypothetical to the VE indicates that she thought it was. *See Morton v. Berryhill*, No. 16 C 11137, 2018 WL 264200, at *6 (N.D. Ill. Jan. 2, 2018) (listing cases remanding where the ALJ ignored the VE's responses to hypotheticals); *Sayles v. Barnhart*, No. 00 C 7200, 2001 WL 1568850, at *9 (N.D. Ill. Dec. 7, 2001) ("An ALJ may not simply select and discuss only that evidence which favors his [or her] ultimate conclusion . . . We believe that this general rule has special force in cases where the ALJ solicits the testimony and opinions of a vocational expert at Step 5, but then proceeds to disregard this testimony without explanation.").

Particularly given the VE's clear testimony that the need for a job coach was likely to preclude competitive employment, this error requires remand. *See Gray v. Berryhill*, No. 2:17-CV-417, 2019 WL 2052321, at *7 (N.D. Ind. May 9, 2019) (remanding where ALJ failed to "seek clarification about whether Gray is required to have a vocational expert and/or a job coach as a limitation"); *Sauders v. Colvin*, No. 1:13-CV-02053-SEB-MJ, 2014 WL 5023629, at *4 (S.D. Ind. Oct. 8, 2014) (remand required where ALJ failed to "provid[e] specific reasons" for finding that a job coach was not needed).

### C.     Reliability of Estimate

Although the case is remanded on other grounds, the Court addresses Plaintiff's argument that the VE did not provide substantial evidence of a reliable method for estimating how many jobs in the national economy that Plaintiff could perform. Pl. Br. at 18-21.

Two techniques for estimating the numbers of jobs available have attracted particular attention within Seventh Circuit case law. One is the "equal distribution" method, which assumes that if there are a certain number of jobs within a broad category, those jobs are spread equally

among the various specific positions that make up that category. The Seventh Circuit has criticized this approach, using the example of "Chefs and Cooks, Hotels and Restaurants":

> [I]t does not take much knowledge of job markets to know that, while certain jobs may exist in large numbers (for example, a "pizza baker," DOT 313.381-014, who "prepares and bakes pizza pies"), others clearly do not (such as a "chef de froid," DOT 313.281-010, who designs "artistic food arrangements for buffets in formal restaurants" including "mold[ing] butter into artistic forms"). Or, by way of a second example, take "Cashiers and Tellers" [. . .] Of the 28 positions included in that group, six exist only in the racing industry, with five of those six existing only at horse-racing tracks. It seems unlikely that over 20% of all cashier and teller jobs in today's economy are at racetracks.

*Chavez v. Berryhill*, 895 F.3d 962, 966 (7th Cir. 2018) (citation omitted) (listing cases). However, the Seventh Circuit has not conclusively rejected the approach as unreliable. *Coyier*, 860 F. App'x at 428 (7th Cir. 2021) (holding that *Chavez* "did not enjoin the use of the equal-distribution method"). VEs have also used a statistical database, Job Browser Pro (also known as "SkillTRAN," the name of the company that produces it), which estimates employment numbers and "[cross-references] to all major national occupational coding systems."[4] Although SkillTRAN appears to be a commonly used database, the ALJ must still elicit "substantial evidence" showing that the way the VE used the program was reliable. *See Dawn L. C. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00626-GCS, 2021 WL 4488421, at *6-7 (S.D. Ill. Sept. 24, 2021) (compiling numerous cases discussing vocational experts' use of SkillTRAN). The VE does not have to "reveal the precise mechanics and statistical model involved," *Bruno v. Saul*, 817 F. App'x 238, 243 (7th Cir. 2020), but must "provide some modicum of confidence in its reliability." *Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020).

At the hearing, Plaintiff's counsel stipulated that the VE was qualified to testify as a vocational expert. (AR 72-73). The VE identified three possible jobs for Plaintiff:

---

[4] *See* https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro (last visited March 28, 2022).

11

housekeeper/cleaner (estimated 135,000 jobs available in the national economy); routing clerk (40,000 jobs); and retail marker (300,000 jobs). (AR 74-77).

Questioned by Plaintiff's counsel, the VE testified at length regarding the method used to reach the number of estimated jobs for each position. In summary, the VE explained as follows: Once every three years, the Bureau of Labor Statistics surveys employers with 50 or more employees regarding the number and type of jobs they offer and the skill and exertional levels required for those jobs. Roughly 80 percent of employers respond to those surveys. That survey data is incorporated in the SkillTRAN software. SkillTRAN allows the user to sort the results by industry, skill level, and exertional level, and to account for whether the job is full-time or part-time. (AR 78-80). The discussion continued:

> [Plaintiff's counsel]: How is the allocation chosen so that we know that the jobs allocated to housekeeper, cleaner, are reliable? How is the allocation number chosen?
>
> [VE]: Well, I would say that would vary every time the survey is conducted. . . . [S]o if you have the grouping and you do the survey, it's a percentage of the total. . . . [L]et's say half of them are in this – you know, housekeeper, cleaners in hotels and those same ones are – they're light [work], they're unskilled, they would fit within this, and it would be the 50 percent. So I would say that those percentages are going to vary every time the survey is conducted because those numbers would change every time. . . . And [] you're further, you know, dividing – weighting them, multiplying them by the percent that are full-time. So --
>
> P: Okay. Was your method the same for routing clerk and retail marker?
>
> VE: Yes.
>
> P: The SOC code that these three jobs are in, do those codes contain other jobs of differing exertional levels and skill levels?
>
> VE: I would say sometimes they do and sometimes they don't, but the bigger groupings could, and that's why, then, they're . . . correlated to a specific job at a specific skill and exertional level.
>
> …

> P: Your Honor, I would object on the basis of the Browning case, the [Alaura] case, the Chavez case.[5] Under Seventh Circuit case law, that the methods described are not reliable. Notice that [the VE] never talked about why a particular allocation factor – counts [as] reliable. The whole thing depends on what the allocation factor is.

(AR 79-81). The ALJ overruled the objection at the hearing, and provided the following rationale in the written decision:

> The vocational expert has professional knowledge and experience in job placement, and she has been appointed by the Agency as an expert, qualified to provide vocational testimony. [Plaintiff's counsel] did not object to the vocational expert's qualifications to provide expert testimony. The Administrative Law Judge found the vocational expert's explanation of her methodology to be sufficient and reliable, and [counsel] confirmed he did not have any evidence to submit to establish the vocational expert's testimony was unreliable. Accordingly, the vocational expert's job information is found to be reliable, and [counsel's] objection is overruled.

(AR 27). In briefing before this Court, Plaintiff objects that the VE's testimony did not adequately explain the method, leaving the ALJ's finding unsupported by substantial evidence. Specifically, Plaintiff argues that the VE's descriptions of the "percentages" and "weighting" of jobs within the SOC codes was unclear. Pl. Br. at 18-21. The objection, together with counsel's questions to the VE, triggered the ALJ's obligation to "ensure that the approximation is the product of a reliable method." *See Brace*, 970 F.3d at 821-23 (remanding where VE testimony did not clearly establish the method used, and counsel objected based on *Alaura*).

There is no evidence that the VE used the equal distribution method in this case. The VE testified that jobs were sorted by skill level, industry, exertional level, and whether they were part-time or full-time, based on the surveys conducted by the Bureau of Labor Statistics. (AR 78-80). Unlike in *Chavez* and *Alaura*, the VE never testified that the method involved simply dividing total jobs by the number of specific job titles. *Cf. Chavez*, 895 F.3d at 969 (VE used equal

---

[5] *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018); *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014).

distribution and provided "no empirical basis" to support the method); *Alaura*, 797 F.3d 508 (VE "assumed" that equal distribution was appropriate).

Plaintiff argues that this does not save the VE's analysis. As the Court interprets Plaintiff's argument: unless the VE's testimony demonstrates that equal distribution does not occur at any point during the process, the method is unreliable. Plaintiff therefore faults the VE for failing to clearly state how the jobs were divided after she had already accounted for skill and exertional levels.[6] Plaintiff argues that if this question was not clearly answered, the case must be remanded, notwithstanding any other indicia of reliability. *See* (AR 81 ("Notice that [the VE] never talked about why a particular allocation factor – counts [as] reliable. The whole thing depends on what the allocation factor is.")); Pl. Br. at 20-21.

The Court understands the reasoning behind Plaintiff's argument, particularly given recent cases discussing the equal distribution method and the need for VEs to "show their work." However, the Court emphasizes that whether the equal distribution method is used is not always the dispositive factor. As previously mentioned, the Seventh Circuit "did not enjoin the use of the equal-distribution method," nor any other method. *Coyier*, 860 F. App'x at 428. Courts have remanded where the VE appeared to rely *only* on the equal distribution method, with no other explanation as to why that method is reliable. *See Chavez*, 895 F.3d at 969; *Alaura*, 797 F.3d 508. Similarly, courts have remanded if a VE provides no clear explanation of any method, other than the fact that SkillTRAN was used. *E.g., Hood v. Saul*, No. 1:19-CV-370-TLS,

---

[6] The Court notes that counsel did not ask that question specifically, but instead asked the general question of how jobs were "allocated," to which the VE referred to the separation by skill and exertional levels. It appears to the Court that the VE did not understand what counsel was asking, and counsel did not clearly request the precise detail he was looking for. *See* (AR 80) ([Counsel]: "How is the allocation number chosen?" [VE:] "[L]et's say half of them are in this – you know, housekeeper, cleaners in hotels and those same ones are – they're light [work], they're unskilled, they would fit within this, and it would be the 50 percent . . . And [] you're further, you know, dividing – weighting them, multiplying them by the percent that are full-time. So –" [Counsel]: "Okay. Was your method the same for routing clerk and retail marker?" [VE:] "Yes.").

14

2021 WL 5002717, at *4 (N.D. Ind. Oct. 28, 2021) ("While the VE testified that she used SkillTRAN data in order to determine job number estimates, the VE could not elaborate as to how those numbers were achieved.").

This case is different, because the VE did provide evidence of the reliability of her method. The VE described what data was used by SkillTRAN; who solicited and provided the data; how the data was obtained; how frequently it was obtained; and how differences in skill and exertional levels were accounted for. *See* (AR 78-80); *cf. Browning*, 766 F.3d at 709 (remanding where VE did not "indicate what those data sources are or vouch for their accuracy"). Those details could give the ALJ confidence in the reliability of the statistics – evidence that was absent in the cases Plaintiff relies on.[7]

In the Court's view, Plaintiff's argument that the reliability of the method depends entirely on the "allocation factor" is misplaced. The question is whether the VE presents sufficient detail about the overall process to meet the substantial evidence standard, "which is not high." *Coyier*, 860 F. App'x at 428 (quoting *Biestek*, 139 S. Ct. at 1154). On remand, if a similar objection is raised, the Court encourages counsel and the ALJ to engage in a thorough discussion with the VE, to elicit as much detail as necessary. *See Ruenger v. Kijakazi,* 23 F.4th 760, 765 (7th Cir. 2022) (Scudder, J., concurring) ("At the very least, the record would benefit from everyone slowing down when VEs take the stand. A disability determination may well mark the difference between income

---

[7] *See Maples v. Saul*, No. 1:20-CV-157-PPS, 2021 WL 1291766, at *5 (N.D. Ind. Apr. 7, 2021) (VE testified that she "[didn't] know how to explain it, and that 'it's all on the software' . . . The VE also stated that she did not rely on her own experience in determining job numbers.") (internal citation omitted); *Jones v. Saul*, No. 1:19-CV-494-PPS, 2021 WL 100357, at *3 (N.D. Ind. Jan. 12, 2021) (VE did not know how the data was gathered, and relied on a report that was not in evidence); *see also Brace*, 970 F.3d at 822 (noting that a VE might provide substantial evidence by showing how the data was obtained and how it accounted for various disabilities, but remanding because "[n]one of these indicia of reliability are present here") (citing *Biestek*, 139 S. Ct. at 1155); *Bruno*, 817 F. App'x at 243 ("Although the VE's description did not reveal the precise mechanics and statistical model involved [with SkillTRAN], it nevertheless constitutes a 'reasoned and principled explanation.'").

15

and no income for the claimant. With so much at stake in these proceedings, it is essential that a reviewing court be able to decipher the evidentiary record.").

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Opening Brief [DE 21], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 28th day of March, 2022.

s/ Joshua P. Kolar  
MAGISTRATE JUDGE JOSHUA P. KOLAR  
UNITED STATES DISTRICT COURT